## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Phillip Hill**

      v.

Case No. 22-cv-290-PB
Opinion No. 2023 DNH 077

**State of New Hampshire**
**Department of Corrections, et al.**

## MEMORANDUM AND ORDER

The plaintiff, Phillip Hill, sued the New Hampshire Department of Corrections (NHDOC) and two of his superiors under state and federal law for discriminating against him on the basis of his disability and retaliating against him for opposing their allegedly unlawful actions. The defendants move to dismiss, arguing that Hill's state law claims are precluded by the Eleventh Amendment and that his federal law claims fail to state claims for relief. Because I conclude that the Eleventh Amendment bars Hill's state law claims, but that Hill states claims for relief under federal law, I grant the defendants' motion in part and deny it in part.

## I.    BACKGROUND

Hill worked as a corrections officer at the New Hampshire State Prison for Men, which is operated by NHDOC.[1] Doc. 1 at 1-3. Like all corrections

---

[1]    Although the complaint appears to allege that Hill is currently an employee of NHDOC, his subsequent filings clarify that he has since retired.

officers, Hill was required to work "mandatory forced overtime hours at the discretion of the supervising officers," often in excess of sixteen hours per week. Id. at 5. Hill, who was previously diagnosed with Post-Traumatic Stress Disorder (PTSD), found that working such excessive hours in the prison setting exacerbated his symptoms, causing him significant distress. Id. at 4-5. Hill sought treatment from a physician, who diagnosed him with Shift Work Sleep Disorder and Burnout Syndrome, in addition to PTSD. Id. at 4.

When Hill's symptoms did not improve, Hill's physician sent a fax to NHDOC requesting that Hill's overtime hours be limited to sixteen hours per week. Id. at 5. Shortly thereafter, Hill's direct supervisor emailed him stating that he was rejecting Hill's request pursuant to a department policy that employees who had restrictions on overtime were prohibited from working any overtime whatsoever. Id. at 6. Hill then proceeded to file three different accommodation requests, all of which requested that he be permitted to work some overtime, but that his overtime be capped at sixteen hours per week.

Hill filed his first formal request in August 2019. Id. In response, NHDOC's Human Resources department requested additional documentation and notified Hill that he was prohibited from working any overtime hours until it resolved his request. Id. NHDOC then publicized Hill's overtime

---

See Doc. 6 at 1, 20; see also Doc. 5 at 1.

restrictions to the other corrections officers, who began teasing him and calling him offensive names. Id. at 5-6. Additionally, Hill began receiving "harassing phone calls from his commander." Id. at 9.

A few weeks after submitting his first request, Hill met with Warden Michelle Edmark (Warden), who requested additional medical information and advised Hill that he was being accommodated by not having any overtime hours. Id. at 7. The Warden followed up with an e-mail informing Hill that he was "only permitted to work his normal 8-hour daily shift, five days per week with two consecutive days off," effectively terminating Hill's ability to "flex" his schedule in the same manner as other officers. Id.

Immediately after his meeting with the Warden, Hill filed a second accommodation request. Id. Human Resources again requested additional medical documentation and reiterated that Hill was barred from working any overtime while his request was pending. Id. Hill provided all requested information in a timely manner. Id. Nonetheless, Hill received a letter from the Warden stating that his two accommodation requests were being denied because his medical documentation showed that he was under "no restrictions." Id. at 7-8.

Hill filed his third and final request for an accommodation in September 2019. Id. at 8. Hill was advised that the Warden was away and would review his request when she returned at the end of the month. Id. By mid-October,

Hill still had not heard back from the Warden and decided to file a formal charge of discrimination and retaliation with the New Hampshire Commission for Human Rights (HRC) and the Equal Employment Opportunity Commission (EEOC). Id. A copy of the charge was sent to Helen Hanks, the Commissioner of NHDOC (Commissioner). Id.

Less than ten days later, Hill was ordered to the Warden's office and "threatened with termination" under N.H. Admin. R. Per. 1003, which allows for the removal of employees for "non-disciplinary reasons," such as when the employee is unable to perform the essential functions of his position or poses a threat to himself or others. Id. Shortly thereafter, Hill received a letter from Human Resources that denied his third request for an accommodation yet requested additional medical information. Id. at 8-9. Until his retirement from NHDOC, Hill was denied the opportunity to work any overtime. Id. at 11; see also Doc. 6 at 20.

Hill initially filed suit against the defendants in New Hampshire state court, alleging violations of both state and federal law. Doc. 5 at 6; see also Hill v. New Hampshire, 217-2021-cv-00555. After the defendants filed a motion to dismiss, Hill moved for and was granted a voluntary non-suit. Doc. 6 at 8. Hill then filed the instant action in this court, alleging unlawful discrimination and retaliation in violation of the Rehabilitation Act, 29 U.S.C. § 794; the New Hampshire Law Against Discrimination, N.H. Rev. Stat. Ann.

§ 354-A:1 et seq.; and the New Hampshire Whistleblowers' Protection Act,

N.H. Rev. Stat. Ann. § 275-E:1 et seq. The defendants now move to dismiss

the complaint in its entirety.

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss for failure to state a claim, a plaintiff

must allege facts sufficient to "state a claim to relief that is plausible on its

face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads

"factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, I employ a two-step approach. See

Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I

screen the complaint for statements that "merely offer legal conclusions

couched as fact or threadbare recitals of the elements of a cause of action." Id.

(cleaned up). A claim consisting of little more than "allegations that merely

parrot the elements of the cause of action" may be dismissed. Id. Second, I

credit as true all of the plaintiff's non-conclusory factual allegations and the

reasonable inferences drawn from those allegations, and then determine if the

claim is plausible. Id. The plausibility requirement "simply calls for enough

fact to raise a reasonable expectation that discovery will reveal evidence" of

illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is

that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

## III.   ANALYSIS

The defendants argue that Hill's state law claims under the Law Against Discrimination and the Whistleblowers' Protection Act must be dismissed because they are barred by the Eleventh Amendment. As to Hill's claims under the Rehabilitation Act, the defendants argue that they too must be dismissed because Hill (1) failed to exhaust his administrative remedies, (2) did not adequately allege that he was disabled, (3) concedes that the defendants engaged in the interactive process, and (4) did not suffer an adverse employment action. I consider each argument in turn.

### A.   State Law Claims

Hill alleges that the defendants violated the Law Against Discrimination by denying his request for a reasonable accommodation. See N.H. Rev. Stat. Ann. § 354-A:7. Additionally, Hill alleges that the defendants violated both the Law Against Discrimination and the Whistleblowers' Protection Act by retaliating against him for filing a complaint with the HRC. Id. at § 354-A:19; id. at § 275-E:2.

The defendants argue that neither claim can proceed against any of the defendants because they all enjoy sovereign immunity under the Eleventh

6

Amendment. In the defendants' view, Hill's complaint does not proceed against the Warden and the Commissioner as individuals, but rather seeks to impose liability on the state itself. Hill does not dispute the defendants' characterization of his complaint, but rather argues that the state waived its immunity in the course of litigation.

The Eleventh Amendment precludes suits for damages brought against states and their instrumentalities. Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015). This includes suits in which a state entity is a named defendant, as well as those that are "in essence against a State even if the State is not a named party." Lewis v. Clarke, 581 U.S. 155, 162 (2017). However, the Eleventh Amendment does not "erect a barrier against suits to impose individual and personal liability on state officials[.]" Hafer v. Melo, 502 U.S. 21, 30-31 (1991) (cleaned up).

Accordingly, Eleventh Amendment protection turns on "whether the sovereign is the real party in interest," meaning "the remedy sought is truly against the sovereign." Lewis, 581 U.S. at 161-162. Where a suit is brought against an instrumentality of the state or a government official's office, it "represent[s] only another way of pleading an action against . . . the sovereign" and is therefore barred by sovereign immunity absent waiver. Id. at 162 (quoting Kentucky v. Graham, 473 U.S. 159, 165-166 (1985)). By contrast, where a suit "seek[s] to impose individual liability upon a

government officer" for her own wrongdoing, sovereign immunity is

inapplicable because "the real party in interest is the individual, not the

sovereign." Id. at 162-163 (emphasis in original).

There is no dispute that NHDOC, as a state agency, enjoys immunity

under the Eleventh Amendment. See O'Connor, 786 F.3d at 138. But whether

the Eleventh Amendment offers protection to the Warden and the

Commissioner turns, first and foremost, on whether they are sued as

individuals or mere substitutes for the state. On this issue, I conclude that

Hill has forfeited his right to argue that he sued the Warden and the

Commissioner in their individual capacities because he has not challenged the

defendants' contention that they have been sued only as substitutes for the

state. See Int'l Union, United Gov't Sec. Officers of Am. v. Clark, 704 F.

Supp.2d 54, 60 (D.D.C. 2010) ("It is a long-established policy that when a

party's opposition to a motion fails to respond to arguments raised by the

opposing party, a court may treat those unopposed arguments as conceded.").

Even without this concession, the substance of Hill's complaint indicates

that the state—and not the Warden or Commissioner personally—is the real

party in interest. Under the Law Against Discrimination, a plaintiff may

pursue a claim against a fellow employee individually, but only to the extent

that the employee either aided and abetted the discrimination or personally

retaliated against the plaintiff. See EEOC v. Fred Fuller Oil Co., Inc., 168

N.H. 606, 611, 613 (2016). Otherwise, claims must be brought against the plaintiff's employer. See id. Notwithstanding Hill's conclusory statement that the Warden and the Commissioner were his "employers," there are no allegations that either the Warden or the Commissioner personally employed him. Doc. 1 at 12. Rather, the allegations are that NHDOC employed him, and that the Warden and the Commissioner are fellow employees of NHDOC (albeit high ranking ones with supervisory authority). See id. at 3.

Ostensibly, Hill could have sued the Warden and the Commissioner personally as individual employees. But his complaint alleges only that his "employer" discriminated and retaliated against him. See id. at 12. Hill neither raised a theory of employee liability in his complaint nor engaged with the relevant case law in his briefing. Accordingly, I do not understand Hill's claims to be lodged against the Warden or Commissioner as individual employees, but rather his employer, NHDOC. For this reason, Hill's claim under the Law Against Discrimination is necessarily against the state.

With regards to his claims under the Whistleblowers' Protection Act, the only qualifying relief Hill seeks is backpay for the overtime he would have earned but for the allegedly unlawful retaliation. See Clark v. N.H. Dep't of Emp't Sec., 171 N.H. 639, 657-658 (2019) (noting that, where a plaintiff brings civil suit under the Whistleblowers' Protection Act, the statute only authorizes an award of reinstatement, backpay, and attorney's fees). But "[b]y definition,

backpay is an award against an employer"—here, NHDOC—and cannot be awarded against the Warden or Commissioner as individual employees. See Negron-Almeda v. Santiago, 528 F.3d 15, 26 (1st Cir. 2008). In this way, it is clear that the Warden and the Commissioner were named merely as proxies for the state.

Thus, the Eleventh Amendment bars Hill's state law claims against all three defendants unless, as Hill claims, the state has waived its immunity. A state may waive its immunity by consenting to suit in federal court through "affirmative litigation conduct."[2] Davidson v. Howe, 749 F.3d 21, 28 (1st Cir. 2014). "If litigation conduct is to constitute a waiver of immunity, that conduct must be unambiguous and must evince a clear choice to submit the state's rights for adjudication by the federal courts." Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 52 (1st Cir. 2006) (cleaned up).

In Hill's view, the defendants initially consented to be sued in federal court when they did not object to his state court motion for voluntary non-suit because he made clear that the reason for his motion was so that he could re-

---

[2]      A state may also consent to suit through legislation that expressly indicates the state's intent to subject itself to suit in federal court. Davidson, 749 F.3d at 28. However, Hill argues only that the state has waived its immunity through its litigation conduct and does not assert that the state has consented to suit in federal court through legislation. See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 306 (1990) ("A state does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts[.]").

file in federal court. Hill, 217-2021-cv-00555, Index 6 at 1 (acknowledging that

Hill's claims are "more properly adjudicated . . . in Federal Court" and

requesting "non-suit without prejudice so that [Hill's] claims . . . can be

resolved in the proper forum"); see also Giragosian v. Ryan, 547 F.3d 59, 66

(1st Cir. 2008) (noting that a court may consider "matters of public record,"

including "documents from prior state court adjudications," in resolving a

motion to dismiss). But that the defendants did not oppose Hill's motion does

not mean that they "voluntarily invoked the jurisdiction of the federal courts."

See Bergemann v. R.I. Dep't of Envtl. Mgmt., 665 F.3d 336, 340 (1st Cir. 2011)

(cleaned up). The decision to refile in federal court was ultimately Hill's, and

the defendants did not have a say in the matter. Cf. Lapides v. Bd. of Regents

of Univ. Sys. of Ga., 535 U.S. 613, 620-622 (2002) (concluding that state

waived immunity where it voluntarily joined a motion for removal to federal

court, but noting that "waiver rules are different when a State's federal-court

participation is involuntary"). Moreover, in responding to Hill's motion for

voluntary non-suit, the defendants expressly "reserve[d] the right to raise any

defense, affirmative defenses, and/or immunities and d[id] not waive the right

thereto should Plaintiff's claims be re-filed in a new forum." Hill, 217-2021-cv-

00555, Index 7 at 2. In light of this reservation, I cannot conclude that the

defendants provided the sort of "unambiguous" consent required for waiver.

Cf. Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt. Bd. for

P.R., 35 F.4th 1, 10 (1st Cir. 2022), rev'd on other grounds, 143 S. Ct. 1176 (2023) (concluding that state did not waive immunity where its prior filings explicitly reserved the right to raise sovereign immunity).

Hill next asserts that the defendants consented to suit by engaging on the merits of his state law claims in the instant motion to dismiss, rather than raising immunity alone. But it is well settled that a state does not waive immunity by engaging on the merits of a case where, as here, it also "asserts its Eleventh Amendment sovereign immunity defense in a timely manner." United States v. Metro. St. Louis Sewer Dist., 578 F.3d 722, 725 (8th Cir. 2009); see also Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 52 (1st Cir. 2006) (holding that "[f]iling a motion to dismiss that specifically asserts Eleventh Amendment immunity" does not constitute waiver of immunity and that arguments to the contrary bordered on "frivolous"). Accordingly, Hill's claims under the Law Against Discrimination and the Whistleblowers' Protection Act are barred by the Eleventh Amendment and must be dismissed.

## B.  Rehabilitation Act Claims

Section 504 of the Rehabilitation Act prohibits federal grant recipients from discriminating against "qualified individual[s] with a disability." 29 U.S.C. § 794. This provision not only prohibits disparate treatment, but also "impose[s] an affirmative duty on employers to offer a 'reasonable accommodation' to a disabled employee." Calero-Cerezo v. U.S. Dep't of

Justice, 355 F.3d 6, 19-20 (1st Cir. 2004). Additionally, § 504's implementing regulations "prohibit retaliation against any person, whether disabled or not, for opposing disability-based discrimination made unlawful by [the Rehabilitation Act]." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 40 (1st Cir. 2012) (citing 28 C.F.R. § 42.503(b)(1)(vii)).

Hill alleges that the defendants violated § 504 by (1) discriminating against him on the basis of his disability, (2) refusing to provide him with a reasonable accommodation, and (3) retaliating against him for requesting an accommodation and filing charges with the EEOC. The defendants argue that Hill's claims under § 504 should be dismissed in their entirety because Hill failed to comply with administrative exhaustion requirements and did not adequately allege that he is disabled. The defendants further contend that Hill cannot state a claim for failure to accommodate because the allegations demonstrate that the defendants engaged in the interactive process. Finally, with regard to Hill's retaliation claim, the defendants contend that he has failed to allege that he suffered an adverse employment action. I address each argument in turn.

1.    Administrative Exhaustion

The defendants argue that actions brought under § 504 must comply with the exhaustion requirements of Title VII, including the requirement that plaintiffs wishing to bring suit must do so within ninety days of receiving a

right-to-sue letter from the EEOC. See 42 U.S.C. § 2000e-5(f)(1). In the

defendants' view, because Hill brought suit in this court more than ninety

days after receiving his right-to-sue letter, his claims must be dismissed.

The defendants' argument confuses the requirements of § 501, which

prohibits discrimination by federal employers, with those of § 504, which

prohibits discrimination by federal grant recipients. The First Circuit has

repeatedly held that, although suits brought under § 501 may be subject to

exhaustion requirements, suits brought under § 504 are not.[3] See Farris v.

Shinseki, 660 F.3d 557, 562 n.5 (1st Cir. 2011); Prescott v. Higgins, 538 F.3d

32, 44 (1st Cir. 2008); Brennan v. King, 139 F.3d 258, 268 n.12 (1st Cir. 1998);

see also Freed v. Consolidated Rail Corp., 201 F.3d 188, 192 (3d Cir. 2000)

("Every court of appeals to have addressed the question has already held that

plaintiffs suing private recipients of federal funds under Section 504 do not

need to exhaust Title VI administrative remedies."). This distinction is

---

[3]     The cases cited by the defendants are not to the contrary. Although the
defendants portray Roman-Martinez v. Runyon, 100 F.3d 213, 216 (1st Cir.
1996), as requiring exhaustion for claims brought under the Rehabilitation
Act, the relevant claims in that case were brought under Title VII. See id. at
214, 216 (noting that, although the plaintiff initially filed an administrative
complaint alleging violation of the Rehabilitation Act, the civil suit at issue
was brought under Title VII alone). Additionally, while the court in Bartlett v.
Dep't of the Treasury, 749 F.3d 1, 9 (1st Cir. 2014), questioned whether
federal employees who opted to bring suit under § 504 instead of § 501 were
required to exhaust, it nonetheless reaffirmed its position that "claim[s]
brought by a non-federal employee under [§ 504]" are not subject to the
exhaustion requirements. Id. at n.31.

derived directly from the statute. Whereas § 501 incorporates the procedural requirements of Title VII, § 504 incorporates the procedural requirements of Title VI, which does not require exhaustion. See 29 U.S.C. § 794a(a); see also Brennan, 139 F.3d at 268 n.12 (noting that § 504 "does not require exhaustion" because it "derives its procedural requirements from Title VI, which does not have an exhaustion requirement"). Because Hill is proceeding under § 504 against a federal grant recipient, he was not required to file suit within ninety days of receiving his right-to-sue letter.

2.   Disability

The defendants next argue that Hill has failed to allege that he is disabled within the meaning of § 504. In the defendants' view, it is insufficient for Hill to merely allege that he has been diagnosed with certain impairments; rather, he must demonstrate that his impairments impede his ability to work. Hill disagrees and argues that he adequately alleged that he was disabled by asserting that his PTSD limits his brain and neurological functions and that his Shift Work Sleep Disorder disrupts his circadian rhythm.

The defendants' argument again stems from a misreading of the statute. The defendants rely on the definition of disability in 29 U.S.C. § 705(20)(A), which defines a disability as an impairment that "results in a substantial impediment to employment." But that provision expressly states that its definition does not apply to Subchapter V, within which § 504 falls. Id. at

§ 705(20)(B). Rather, the appropriate definition for the purposes of Subchapter V is found in 29 U.S.C. § 705(20)(B), which incorporates the definition of disability found in the Americans with Disabilities Act (ADA). Id.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Under the ADA, an individual need not demonstrate that his impairment interferes with his ability to work so long as he establishes that the impairment affects some other major life activity. See Kurtzhals v. Cnty. of Dunn, 969 F.3d 725, 728-729 (7th Cir. 2020); Phillips v. Loudoun Cnty. Pub. Sch., No. 1:19-cv-501, 2020 WL 2205065, at *7 (E.D. Va. May 6, 2020). Indeed, the ADA explicitly envisions that an individual may be disabled, yet not limited in his ability to work. See 42 U.S.C. § 12111(8) (defining a "qualified individual" as someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires") (emphasis added).

Applying the correct definition, Hill has adequately alleged that he is disabled. As an initial matter, some courts have found that a plaintiff sufficiently alleges that he is disabled under the ADA where he states that he has been diagnosed with PTSD. See, e.g., Beadle v. Postal, No. 17-00049 JMS-KSC, 2017 WL 1731683, at *3 n.4 (D. Haw. May 2, 2017); Franklin v. City of Slidwell, 936 F. Supp.2d 691, 710 (E.D. La. 2013); see also 29 C.F.R.

§ 1630.2(j)(3)(ii)-(iii) (noting that PTSD is an impairment that, "[g]iven [its] inherent nature . . . will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity"). But see Milteer v. Navarro Cnty., 3:21-cv-2941-D, 2022 WL 1321555, at *7 (N.D. Tex. May 3, 2022) ("The conclusory allegations that [the plaintiff] suffered from PTSD . . . are insufficient, without more, to plausibly allege that he has a 'disability.'"). In any event, Hill does not simply allege that he has been diagnosed with PTSD, but also alleges that his PTSD limits his brain and neurological functions and causes "sleep issues." Doc. 1 at 3-4. Because both sleep and the "operation of major bodily functions" qualify as major life activities, Hill has alleged that his PTSD substantially limits three major life activities. See 42 U.S.C. § 12102(2). Thus, he has sufficiently alleged that he is disabled within the meaning of § 504.

      3.    Interactive Process

      Similarly unavailing is the defendants' argument that Hill's reasonable accommodation claim must be dismissed because the allegations show that the defendants engaged in the interactive process. Section 504 does not simply require employers to engage in the interactive process, but rather requires employers to affirmatively provide reasonable accommodations to disabled employees. See Calero-Cerezo, 355 F.3d at 19-20. Although fulfilling this obligation may sometimes require engaging in the interactive process, "it is

possible for an employer to satisfy its duty to engage in 'interactive process' yet still fail to provide 'reasonable accommodation' to a disabled employee." See Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 108 n.7 (1st Cir. 2005); see also Enica v. Principi, 544 F.3d 328, 342 (1st Cir. 2008) ("While the [defendant] certainly took part in the interactive process and made some effort to work with [the plaintiff] . . . it is less than clear that it provided [the plaintiff] with reasonable accommodations."). Thus, even if the defendants are correct that they engaged in the interactive process, Hill could still sustain a reasonable accommodation claim under § 504 to the extent the defendants nonetheless failed to provide him with a reasonable accommodation.[4]

4.   Retaliation

Hill alleges that, as a result of his protected activities, he (1) was denied the ability to "flex" his schedule or earn additional income by working overtime, (2) had his restrictions publicized to his colleagues, (3) received harassing phone from his supervisor, and (4) was threatened with termination. The defendants assert that Hill's retaliation claim must be dismissed because none of these actions constitute adverse employment actions.

---

[4]      The defendants do not argue that the accommodation provided was reasonable as a matter of law or that they otherwise satisfied their obligation to accommodate Hill, and I express no position on the matter.

"To establish a claim of retaliation, a plaintiff must show that (1) [he] engaged in protected conduct, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse employment action." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007); see also D.B., 675 F.3d at 41 ("The standard for retaliation claims under the Rehabilitation Act is the same as the standard under the ADA."). "To establish an adverse employment action, [a plaintiff] must show that 'a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 36 (1st Cir. 2011) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). "Whether a reasonable employee would view the challenged action as materially adverse involves questions of fact generally left for a jury to decide." McArdle v. Dell Prods., 293 F. App'x 331, 337 (5th Cir. 2008); see also Crawford v. Carroll, 529 F.3d 961, 973 n.13 (11th Cir. 2008).

In light of the fact-laden nature of the inquiry, I cannot conclude at the present stage that the defendants' actions could not, as a matter of law, constitute adverse employment actions. See White, 548 U.S. at 69 (noting that "[c]ontext matters" in the adverse employment action determination and that "the significance of any given act of retaliation will often depend upon the

particular circumstances . . . which are not fully captured by a simple
recitation of the words used or the physical acts performed"). Indeed, the First
Circuit has previously concluded that similar actions could constitute adverse
employment actions. See, e.g., Henderson v. Mass. Bay Transp. Auth., 977
F.3d 20, 40 (1st Cir. 2020) ("Denial of overtime opportunities can be a
materially adverse action in certain contexts[.]"); Paul v. Murphy, 948 F.3d 42,
55 (1st Cir. 2020) ("In certain circumstances, it may constitute an adverse
employment action for an employer to make an employee's EEO-related
activity known to others in the workplace."); Valle-Arce v. P.R. Ports Auth.,
651 F.3d 190, 198 (1st Cir. 2011) ("an environment of hostility and
harassment may also suffice [as an adverse employment action] if it 'well
might have dissuaded a reasonable worker from making or supporting a
charge of discrimination.'") (quoting White, 548 U.S. at 68); Billings v. Town of
Grafton, 515 F.3d 39, 42, 54 (1st Cir. 2008) (concluding that a formal
investigation and threat of "further, more serious discipline" constituted a
materially adverse action); see also 1 Discrimination in the Workplace § 18:6
(2023) ("While the 'mere initiation' of an investigation is generally not
sufficient to constitute adverse action for a retaliation claim, an investigation
that carries the prospect of material consequences for the plaintiff may
constitute adverse action.").

Although the defendants argue that each of these actions was wholly justified under the circumstances and motivated by a legitimate concern for Hill's health rather than any retaliatory animus, these are quintessential questions of fact that must be considered at a later stage. For present purposes, it is sufficient that Hill alleged a close temporal connection between his protected activities and the allegedly retaliatory actions. See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) ("[P]rotected conduct closely followed by an adverse action may justify an inference of retaliatory motive.") (quoting Marx v. Schnuck Markets, Inc., 76 F.3d 324, 329 (10th Cir. 1996)).

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss (Doc. 5) is granted in part and denied in part. Counts III and IV are dismissed, but Counts I and II may proceed.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

June 27, 2023

cc: Counsel of record

21